Jean Murrell Adams, Esq. (State Bar No. 138458)
Gail S. Hodes, Esq. (State Bar No. 139693)
ADAMS ESQ, A Professional Corporation
1300 Clay Street, Suite 600
Oakland, CA 94612
510-832-6000
510-832-3099 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA, an individual and ARLICIA SIMMONS an individual,<br><br>    Petitioners,<br><br>    v<br><br>PITTSBURG UNIFIED SCHOOL DISTRICT; ANTIOCH UNIFIED SCHOOL DISTRICT, and DOES 1-20,<br><br>    Defendants | Case No:<br><br>**COMPLAINT IN SUPPORT OF APPEAL OF DECISION OF ADMINISTRATIVE LAW JUDGE UNDER 20 U.S.C. §1415; 28 U.S.C.S. §1331** |

  COMES NOW, Plaintiffs BRIANNA SIMMONS. (hereinafter "BRIANNA" or "STUDENT"), individually, ARLICIA SIMMONS (hereinafter "MS. SIMMONS) individually, by and through their counsel, GAIL HODES of ADAMS ESQ, and hereby complain and allege as follows:

**INTRODUCTION**

1. This is an appeal of a decision by the Office of Administrative Hearings ("OAH") denying BRIANNA special education eligibility, evaluations, services and placement and depriving MS. SIMMONS of her right to participate in the decision-making process regarding the development of her child's educational programming. Defendants, PITTSBURG UNIFIED SCHOOL DISTRICT (hereinafter "PUSD" or the "District"), and ANTIOCH UNIFIED SCHOOL DISTRICT (hereinafter "AUSD" or the "District") failed to recognize the gravity of BRIANNA'S disease despite her obvious needs, and refused to assess BRIANNA for special education services, deem her eligible for special education, and subsequently provide her with the safeguards and services required by law. Instead of including MS. SIMMONS in the decision-making process, the Districts systematically excluded her by refusing to provide evaluations, and PUSD failed to follow its legal duty to provide the assessments even after MS. SIMMONS made the request. As a result of Defendants' conduct, BRIANNA was denied special education services, rights and protections.

2. Plaintiffs seek an order overturning the OAH decision and deeming BRIANNA eligible for special education and related services. Plaintiffs also seek compensatory relief in the form of monetary damages, compensatory education and related services to compensate for and repair the harm placed on BRIANNA and MS. SIMMONS.

**PARTIES AND JURISDICTION**

3. Plaintiff BRIANNA, was at all relevant times, a minor individual residing in Contra Costa County, California within the boundaries of the Districts. BRIANNA turned eighteen just prior to the commencement of the administrative hearing and executed a limited power of attorney authorizing MS. SIMMONS to act on her behalf with regard to her educational rights.

4. Plaintiff MS. SIMMONS, is now, and at all times herein mentioned was an individual residing in Contra Costa County, California within the boundaries of the Districts and was the parent and guardian of Plaintiff, BRIANNA. MS. SIMMONS has

standing herein in her individual capacity as to the IDEA claims.  Pursuant to the Supreme Court's decision in *Winkelman v. Parma City School District*, 127 S.Ct. 1997 (2007), the IDEA does not differentiate between the rights accorded to children and the rights accorded to parent and as a consequence a parent may be a "party aggrieved" for the purposes of § 1415(i)(2) regarding "any matter" implicating these rights.

5. Defendant PUSD, is now, and at all times herein mentioned was, a public school district duly organized and existing under the laws of the State of California and is located within Contra Costa County.

6. Defendant AUSD, is now, and at all times herein mentioned was, a public school district duly organized and existing under the laws of the State of California and is located within Contra Costa County.

7. This civil action is brought against the Districts pursuant to the provisions of 20 U.S.C. § 1400 et. Seq., and is commonly known as the Reauthorized Individuals with Disabilities Education Act ("IDEA").

8. This Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331 in that it arises under the IDEA.  Moreover, Section 1415(i)(2) of Title 20 of the United States Code expressly vests this Court with jurisdiction over this action.

9. Plaintiffs have exhausted their administrative remedies as required by IDEA.

**GENERAL ALLEGATIONS**

10. Plaintiffs repeat and re-allege the allegations contained above as though fully set forth herein.

11. BRIANNA was diagnosed with Multiple Sclerosis ("MS") in March 2011 while she was in the tenth grade at AUSD.

12. Throughout her academic life until her diagnosis, BRIANNA was a very good student and had excelled in school.  She had a long history of academic achievement including receiving honors, being in the honors society, and being in leadership programs She had achieved an impressive grade point average ("GPA") while at AUSD prior to her MS diagnosis, and teachers and administrators at both Districts knew that she was on track

to go to a prestigious four year University to study architecture

13. Upon being diagnosed, BRIANNA had to miss approximately two months of school. Her MS impacted her on a daily basis, impeding her ability to not only be in school, but to do school work.  She would experience great fatigue, she had weakness in her limbs that impacted her ability to write and walk, to the point where she fell down at times. Her vision would blur at times.  She had pain radiating in her limbs, and had swelling of her joints. Once she was able to return to school, she could not attend school all day and had trouble doing her schoolwork due to her fatigue.  She experiences dizziness and nausea. She would miss school frequently because she felt too ill to attend.

14. In addition, BRIANNA had severe flare-ups of her disease that would land her in the hospital approximately every three months.  After a flare-up, Brianna had difficulty speaking, she had difficulty understanding information and focusing and had to have information repeated. Brianna took several medications that had side effects. The side effects included nausea, enhanced fatigue and drowsiness, severe mood swings, and

15. AUSD representatives, including the  Principal, Vice Principal Jason Murphy, and Counselor were immediately on notice that BRIANNA'S disease was impacting her vision, mobility, her stamina, ability to focus, and her ability to attend school.  BRIANNA'S grades immediately plummeted. There was discussion of putting her "out of school" on the alternative education program for home and hospital, however BRIANNA'S physicians and her parents did not want her to stay at home isolated. Instead, she was put on a "504 Plan."[1]

16. AUSD never assessed Brianna for the possibility that her MS caused her to suffer a disability that required special education.  AUSD never discussed an IEP or Brianna's entitlement to one or a FAPE at all with BRIANNA's parents.

17. The Administrative Hearing convened on May 6-9, 2013.  AUSD Vice Principal Mr. Murphy testified that he researched MS online and determined that all BRIANNA needed was a 504 Plan.  However, there was testimony adduced at the hearing

---

[1] A "504 Plan" is a document created pursuant to Section 504 of the Rehabilitation Act of 1973 (29

Complaint

that pediatric MS is rare. Mr. Murphy was not qualified to determine BRIANNA's specific needs.

18. Despite BRIANNA'S best effort to stay caught up, her grades continued to decline as a result of her MS. Throughout the Spring semester of 2011, as well as the summer, both BRIANNA and MS. SIMMONS reached out to Mr. Murphy telling him that BRIANNA was struggling, and requested help, including tutoring. They told him for example that BRIANNA was fatigued, too sick to attend school at times, and when she was in school, she was having trouble walking to her classes. Mr. Murphy told Plaintiffs that BRIANNA could make up work over the summer. Yet despite making up the work, AUSD did not update BRIANNA'S grades, nor give her credit for work turned in, for almost two years. Her GPA from that semester was 1.62. Plaintiffs contacted Mr. Murphy several times that summer, but never heard back from him.

19. MS. SIMMONS continued contacting AUSD officials for almost two years, asking them to please update BRIANNA's grades to reflect the work she did, but to no avail. The Principal and Counselor of PUSD where she transferred that fall even tried to help get Brianna's grades from AUSD updated to reflect her work. Finally, in September 2012, BRIANNA'S senior year, AUSD changed her grade to a C in World History, and a B in ELA. MS. SIMMONS even wrote to the Principal of AUSD asking him for help getting STUDENT'S Geometry grade before applying to colleges. However, it wasn't until October 31, 2012, that AUSD finally gave BRIANNA her grade for Geometry and it was a C. She did not receive a grade for Forensics until January 2013, after filing a Request for Due Process Hearing, and it was a D. BRIANNA had never before earned a C or a D grade.

20. As a result, BRIANNA had to apply to colleges with the transcripts reflecting her poor grades from the semester she fell ill. BRIANNA did not get into a four year University as she had always hoped she would.

21. The ALJ concluded that Mr. Murphy's belief that AUSD was only required

U.S.C. Sec. 794, and differs from the IDEA.

to test BRIANNA for special education and related services after exhausting all possible accommodations and interventions in the general education setting belief was wrong. (Decision Pg. 17). However, the ALJ concluded that AUSD did not violate it's child find duties in failing to assess BRIANNA.

22. BRIANNA experienced distress and anxiety over her sinking grades and the lack of help and she began taking anti-anxiety medication. In the summer of 2011, BRIANNA went to UCSF for a more in depth examination of her MS. They gave Plaintiffs information about school concerns and MS, specifically informing them of IEP's and special education services available to students with MS.

23. BRIANNA transferred to PUSD in August 2011. MS. SIMMONS informed PUSD of Brianna's illness, her needs, her limitations from her disease, and that she had missed a lot of school the previous semester, and that she would continue to miss school due to her illness.

24. Soon afterwards, on two separate occasions, MS. SIMMONS requested from BRIANNA's counselor, Jasreen Rai an IEP for BRIANNA. In addition, BRIANNA requested an IEP. Each time, Ms. Rai told Plaintiffs that BRIANNA could not have an IEP because she was not eligible for one. PUSD did not provide Prior Written Notice to Plaintiffs explaining the denial, as required by the IDEA.

25. The ALJ found Plaintiffs' testimony that they had made the requests persuasive and made a specific finding of fact that MS. SIMMONS had requested an IEP. (Decision Pg. 8). The ALJ found that BRIANNA proved by a preponderance of the evidence that PUSD committed a procedural violation of the IDEA by failing to assess her for special education and related services under the category of Other Health Impairment ("OHI").

26. The ALJ found that in addition to MS. SIMMONS' request whether BRIANNA was eligible for an IEP, which PUSD should have treated this inquiry as a request for an assessment and begun preparing a plan to assess Student, the downward slide in Student's academic performance, despite her 504 Plan, was sufficient to cause PUSD to suspect that Student's MS symptoms were adversely affecting her educational

performance on an ongoing basis, such that Student should have been assessed for eligibility of special education and related services under the category of OHI, in accordance with *Dept. of Educ., State of Hawaii v. Cari Rae S.* (D. Hawaii 2001) 158 F.Supp.2d 1190, 1194.   (Decision Pg. 18).

27.   However, the ALJ found that the procedural violation did not deny STUDENT of a right to a FAPE, or deprive her of educational benefits, or significantly impede her Parents' opportunity to participate in the decision-making process regarding the provision of a FAPE.  (Decision Pg. 19, 20).

28.   The ALJ found that BRIANNA'S Parents received information from UCSF about MS and STUDENT's needs, and therefore her parents did, in fact, meaningfully participate in the decision-making process, particularly when Student would not have ultimately been eligible for special education. (Decision Pg. 19).

29.   Throughout her 11th and 12th grade years BRIANNA's absences due to her disability continued at PUSD. She was often too sick to go to school, and she didn't have the stamina to attend school all day. As a result of her MS, BRIANNA missed at least 40 days of school through January 2012.  She received F grades in Algebra, Spanish and Chemistry.  Despite accommodations the teachers told her that she missed too many classes to catch up, and they would not fully implement the 504 Plan by sending her tests or assignments so that she could work on them in the hospital.  She struggled to keep up and she fell farther and farther behind.  She had to retake Algebra 2 the following summer online.  PUSD was aware that Brianna's parents felt that her needs were not being met.

30.   However, in spite of being on notice of BRIANNA's struggles and the obvious signs that she needed more help, specifically special education and services, no one at PUSD discussed referring Brianna for assessments for special education, other than Ms. Rai telling MS. SIMMONS that BRIANNA was not entitled to an IEP following MS. SIMMONS' request.

31.   As a result of her struggles in school, BRIANNA had anxiety and depression, with panic attacks.  MS. SIMMONS was forced to continuously advocate for BRIANNA.  She forwarded a letter from STUDENT'S physician at Kaiser to PUSD. The

letter asked the school to "modify her school work load to allow her to pursue adequate sleep each night, and not have to stay up late to get all of the homework done

32. On November 22, 2011, BRIANNA received an Neuropsychological Assessment from UCSF. It specifically stated that it was "not a comprehensive psychoeducational assessment." It stated that BRIANNA'S physical symptoms of MS were interfering with her "ability to succeed at her previous level." It also stated that BRIANNA'S coping skills were challenged and she was overwhelmed and stressed. Plaintiffs did not submit the report to PUSD, but admitted it at the Due Process Hearing to corroborate her claims of physical impairment and emotional stress.

33. The ALJ relied on the testimony of Defendants' expert witness Dr. Nancy E. Sullivan on the issue of whether Student needed an assessment and special education and related services. Plaintiffs objected to Dr. Sullivan testifying as a witness in the case on the grounds that she reviewed STUDENT's educational records without their consent and thus violated STUDENT's privacy rights under the Family Educational and Privacy Rights Act (FERPA) Regulations, 34 CFR 99.30, 31, which protects a student from unauthorized disclosure of personal information in her school records. Dr. Sullivan had never met BRIANNA or her parents, and had never received consent to review any of her educational records from BRIANNA or her parents. The ALJ overruled Plaintiffs' objection and stated that because Plaintiff' had chosen an open hearing, Dr. Sullivan could review the records, and she could testify. However, had Plaintiff known that the ALJ would base his decision regarding Dr. Sullivan testifying and the FERPA violation on the fact that Plaintiffs had elected to have an open hearing, they would have elected to have it closed.

34. Plaintiffs contend that the ALJ erred, *inter alia*, in that he: (1) incorrectly held that PUSD's refusal to assess was a procedural violation that did not result in significantly impeding the opportunity of the parents to participate in the decision-making process regarding the provision of a FAPE; (2) failed to make a finding that PUSD'S failure to issue Prior Written Notice following Parent's request for an assessment constituted a denial of FAPE; (3) incorrectly held that AUSD did not violate its' child find

obligations by failing to assess STUDENT for special education; (4) incorrectly permitted the testimony of Defendants' expert Dr. Nancy Sullivan over Plaintiffs' objection, and then relied on that testimony in finding that BRIANNA did not need assessments; (5) incorrectly held that BRIANNA was not eligible for special education under the category OHI; (6) incorrectly held that parents were not denied due process by PUSD'S failure to include them in the decision making process by failing to disclose all records including email communications.

## FIRST CLAIM FOR RELIEF

**(Appeal of Administrative Due Process Hearing Against All Defendants Due to Violation of Plaintiffs' Rights Under the IDEA)**

35. Plaintiffs repeat and re-allege the preceding paragraphs as though fully set forth herein.

36. As the aggrieved parties under the OAH Hearing Decision, Plaintiffs appeal the administrative decision as to the issues presented as well as all other matters and issues raised and determined against Plaintiffs.

37. The errors in the ALJ's decision listed in paragraph 34 are not inclusive and Plaintiffs reserve the right to bring any and all errors to the Court's attention when they submits their brief to seek reversal of the decision.

38. All portions of the decision that were against Plaintiffs should be reversed as inconsistent with the IDEA, the applicable regulations and applicable California law.

39. As a direct and proximate result of the actions described above, Plaintiffs sustained damages including, but not limited to, loss of educational opportunity, loss of special education and related services, and related educational costs in an amount to be ascertained according to proof.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court receive the records of the administrative proceedings, and based on the foregoing enter judgment for Plaintiffs

and against Defendants as follows:

1. Overturn the OAH Decision in its entirety and deem BRIANNA eligible for special education and related services;
2. That the Court award compensatory damages to Plaintiffs and against Defendants in a sum according to proof;
3. That the Court award Plaintiff the costs of suit incurred herein, including reasonable attorney's fees, interest and costs in connection with the filing and prosecution of all claims herein, including those incurred at the administrative level; and
4. For such other and further relief as this Court may deem just and proper.

Dated:  September 25, 2013              Respectfully submitted,


/s/ Gail S. Hodes
Gail S. Hodes Esq., (SBN 139693)
For ADAMS ESQ., Attorney for Petitioner
/s/Jean Murrell Adams
Jean Murrell Adams Esq., (SBN 138458)
For ADAMS ESQ.,
Attorney for the Petitioner